Mr. Peck, whenever you're ready. May it please the Court, Stuart Peck for the appellants. At my counsel table I have Alan Goodman and Tripp Dubose. The Court asks us to address an oral argument, the Interlocutory Appeal Jurisdiction Issue. This Interlocutory Appeal clearly meets 1292A3 because the order of the Court, the decree of the Court, determined the rights and liabilities of parties. Two cases are directly on point, the Mr. Dean case and the Saramacca case rendered by this Court. In the Mr. Dean case, you had a bank on the preferred ship mortgagee competing with the charter, with the charter lien, a very important case in Amnesty. And the Court issued an order, Interlocutory Order, granting summary judgment to the bank. This Court looked at that and said that determined the substantive rights and liabilities of the party as to priority. In the Saramacca case, the Court entered Interlocutory Order. JUSTICE KENNEDY So what was still left in that case as to  After summary judgment? MR. PECK I don't think anything was left. I think it was the amounts weren't set. There was money in the registry of the Court. JUSTICE KENNEDY I know, but it had fully resolved liability if not deciding the amount of that liability. MR. PECK I fully decide priority. It fully decided. JUSTICE KENNEDY Yeah, I know you said priority, so that's why I'm pursuing that. But what was still left to resolve as to the amount that any particular party or as to whether any particular party would be entitled to something? MR. PECK Well, the problem in that case was there was a fund in the Court, and there was not enough for both lien claimants to vie over. I don't think the Court decided that. JUSTICE KENNEDY It doesn't matter dividing the pot in what order. So didn't that fully resolve? To me, the case law that concerns us is we have said at times in places, in cases like Todd Shipyard's, that you need a full resolution of liability, and you can deal with damages separately, but you can come up on after you have a significant enough determination on liability. It sounds like from what you're talking about, that's consistent with that case law. MR. PECK I think it's consistent, but it just went to priority. It didn't go to the amounts and all that. And we don't have that here. MR. PECK In this case, we do, Your Honor. We go to whether they ask for summary judgment for recognition, enforcement, and validity of their mortgage. We represent the vessel. As to the vessel, that liability was set as that mortgage was recognized. That was a final determination of the defense we had. The defense was it's not a viable mortgage, therefore, the vessel is not liable for it. That's similar to the other Kingsgate case not cited, which is 815 F. 2nd, 918.921. The Third Circuit observed, the case law indicates that they were appealed from conclusively determinants of merits of a claim or defense. So it wasn't, it determined the merits of our defense. That's the important thing. Our defense was cut off. Like the Saramaca, that effectively, that ended the case because after the court ruled, the bank moved for an interlocutory sale of the vessel and asked the credit bid. It was all over with. We fortunately had filed this interlocutory appeal, and the district court had stated, and we filed a 28J letter with the order of the court after this appeal was filed, where the court said there's a substantive issue here, it's very important, and the vessel owner, the vessel will suffer irreparable harm because if it goes to interlocutory sale with a final determination of the fact that it's a valid enforceable mortgage, which they credit bid on, we'll have a, later on, if we appeal that order, we'll have a useless judgment. There'll be no race for this court. So we'll never have an effective review. So she stated, knowing how important this issue, irreparable harm we would have. And that's the idea of the reason 1292A3 was established when you would, when there won't be any effective appeal. And that's what we have here. What is left to decide in this case? Well, there's left to be decided was the in personam defendants. The court did not decide the amount of that. As to the other three vessels involved in the case, there was issues of prescription. They weren't decided. But as to Little Al, this vessel, it was decided. They asked for recognition and enforcement of the priority of their mortgage, and that was decided. It's all over with. They're going to go to interlocutory sale and go enforce that mortgage. And I can't stop it. It's a law of the case. The court decided there's a valid mortgage with priority against this vessel, and they want to credit bid the amount of their mortgage in. And we can't contest that. That's why there's been a final determination of the rights and liabilities. I understand why the court asked about this. It's always important to look at these interlocutory appeals, but in this court, I think we're squarely meet that, especially with the Saramaca. This has effectively terminated our rights, and it effectively was a ruling on the merits conclusively determining our defense on the validity of that mortgage. And that's why this interlocutory appeal falls within 1292A3. It's not like subject matter jurisdiction, dismissal of a motion. It's not like something technically procedural. This is a substantive ruling of this court, and it's so important, the court issued a stay order. So important, knowing it's a case of first impression, that we put forth the substantive issue that there's irreparable harm to us in public policy, favored us. She gave us a stay order on that. So again, we're faced with a useless judgment rule, and we won't have any rights, because substantively, as I said, again, I have to repeat myself, our defense has been conclusively determined on the merits. There's nothing else as to us, other than ordering for sale. There are other issues with other defendants and other vessels, but the case law says that's okay for an interlocutory appeal, as it's to this defendant, this vessel. But we don't want you to use up all your time on this. Okay. Any other questions from the panel? Why don't you move ahead? Yes. Well, the mortgage here is anything but preferred. I can tick off the reasons why it's not. It does not state an amount. It's a fictitious amount. It doesn't state a maximum amount. It doesn't secure future advances. The mortgage is dated May 7th, 2014. There was no debt in existence at that time. It's payable the order of itself. I don't know what that means. Paragraph 12 says the note evidences indebtedness, which is totally made up for necessary engines and supplies and services furnished by this bank to this vessel. And then there's a pledge agreement that doesn't pledge the note. Under Louisiana law, you have a collateral mortgage, you pledge the note. That didn't happen. But the bank's in the box here, because the bank says, oh, just look at the ship mortgage check. And we meet the requirements. You don't look. There's no gaps here. But then it has this problem, because the note in that, the collateral mortgage note, the note there is not a real note. It's a fictitious note. In Louisiana, it's a made-up note. There was no debt at the time, and they're trying to use a collateral chattel mortgage. They have to look at state law. But their problem in state law is collateral chattel mortgages had been repealed under Louisiana law at the time. I guess the bank kept on using the same form and didn't check the law. To have a preferred mortgage, it has to be able to hold the vessel, substantial compliance with 31.321, and it'll be a documented vessel. And then it ticks off. All you need is the names and addresses, identify the vessel, state the amount of the obligation secured, state the interest of the mortgage or state the interest of the vessel, and sign and acknowledge it. They argue, you said, oh, that's enough. You don't have to fill in the gaps. But they talk out of both sides of their mouth, because they have this fictitious note up there, and with a law that's been repealed. And so the bank's position is contrary to Customs Fuels. This court in Customs Fuels says, SMA, the Spinship Mortgage Act, is not complete. It provides minimal recording requirements, and merely following the procedures does not create a valid mortgage. Admiralty Court needs to look at other sources. But the district court did not engage in any analysis. It filed a, the NUNI-G case just handed down by another district court. And in the NUNI-G case, they said there's nothing in sim law, the SMA, that the mortgage must be valid. That's contrary to Customs Fuels. And the NUNI-G case was different, because there was a maximum amount, and it was a different note. Here, there's a specific, made-up, fictitious note that talks about, for evidence by the indebtedness in paragraph 12 of that mortgage, that deals with, you know, things, the bank doesn't loan money. It's just made up. The problem is, there's no federal law on mortgages, and there's no provisions regarding the contents of the mortgages, and there's no provisions regarding amendments of mortgages. It's really just a registry statute. And again, Customs Fuels held following the recordation requirements doesn't make a mortgage valid. There are a couple old cases, district court cases, the Mary Evelyn and South Lafourche case, where they said, oh, well, they looked at a collateral mortgage law of Louisiana, and it was valid then, and so they upheld those for a mortgage. But that is no longer, there's no collateral chattel mortgage under Louisiana law. It's been repealed in 2001. So, and mortgages in Louisiana only exist when they're authorized by law. So notwithstanding the problem, they used that old form, but the problem here, the real problem here is the requirement, the SHIP Mortgage Act requires that you state the amount of the obligation, direct or contingent, that is secured or may be secured by that mortgage. There's no obligation here. It's nothing. There's no actual debt. And it certainly doesn't for necessaries or supplies provided. And the Louisiana Supreme Court and Diamond Services said a collateral mortgage note, as we have here, is virtually meaningless. There's, has no intrinsic value. It differs from a typical note because there's not really, doesn't represent a debt actually owed. The collateral mortgage note now under Louisiana law is defined to only deal with real property. So, there's no direct or indirect or contingent obligations secured by this purported mortgage. It says it has a specific debt evidencing in paragraph 12 stuff that's made up. There's no reference to maximum amount. There's no reference, these mortgages also say for future advances, I do SHIP financing, put a maximum amount, future advances. It doesn't say that. It just says on this specific note, and we know this note is not real. It's a knee veriture collateral mortgage note. So it violates the SHIP Mortgage Act for that reason. It also violates, it's not a SHIP preferred SHIP mortgage because it's not a valid mortgage. Again, there's no federal common law, so we have to look at state law. And in the past, the courts have looked at the Louisiana law and say, oh, you have a collateral charitable mortgage and it's allowed under state law. Here it's been repealed. So it's no longer valid. So the SHIP mortgage is not valid. Judge Morgan of the New Jesus said, well, just file the recordation requirements. It doesn't matter whether the mortgage is valid or not. The problem is, you could have a cocktail napkin, a one-page document, just stating those requirements, putting them out, call her a mortgage, and by her decision, that's all you need. Well, that's like the UCC-1. However, the UCC requires you to have a granting clause in the security agreement and the mortgage should have at least a granting clause and you have to look to state law. Something you have to mortgage. You have to have some language in there to have an actual mortgage. But the way she, the way they read it, the district court is, just file the requirements, that's good enough. I don't, that would wreak havoc with marine finance in the United States because they all look to the UCC. And again, the bank says, oh, well, look to state law, you won't have uniformity. Well, what's the UCC? It's a uniform commercial code. And in the Interpol decision, I believe the Ninth Circuit said that the UCC is like the federal law of common law of amnesty, quoting Gilmore and Black. So we do have uniformity. We do have things to fill the blanks in. It's a UCC. In state law, that's, there's where the blanks are. The problem here, they need state law. There was a, it was confected in Louisiana, there was a choice of law provision. They need Louisiana law, but Louisiana law says this type of mortgage is invalid. So we have invalid mortgage here that doesn't state the exact amount. It is not a preferred ship mortgage. The consequences of that, Your Honor, although we're not allowed to appeal dismissal of subject matter jurisdiction, but the consequences of that is, if this court finds it invalid and not preferred, it goes back down to the district court. They can't proceed with the interlocutory sale because that court no longer has subject matter jurisdiction. Ship mortgage by itself is not a maritime contract. It needed the Ship Mortgage Act. Detroit Trust Supreme Court says even though it's salty, it involves a vessel, it is not a maritime contract. So unless it's preferred mortgage under the Ship Mortgage Act, they're out of luck. And that's why this is important. That's why this goes to substance. That's why this is an interlocutory appeal that falls in 1292A3, because it deals with the substance of our defense, and a very important defense. So the NUNIG was decided wrong. It violated. It went against custom fuels. Case law has looked all along to look to see validity of mortgages. We've looked at state law for adequate consideration, for self-help remedies. The cases are replete where in the gaps of the Ship Mortgage Act, they've looked to state law. So this purported mortgage is a mess. In many reasons, it's not a preferred mortgage. And therefore, we ask the court to rule in the favor of the appellants and reverse this decision by the court with little analysis and remand it down, or make the decision that's not valid. Thank you. Thank you, counsel. Good morning, your Honors. Will Baldwin on behalf of State Bank, the appellee in this matter, may it please the court. There's a lot of things that were addressed just now, and I think there's a lot of things we want to get through. So I'm going to start with the appellate jurisdiction, because I do think that's a seminal issue. It's certainly the gating issue that gets us to having the court look at the substantive issues raised in appeal. Judge Southwick, you asked what is left in the district court. That is a very important question as it relates to 1292A3, because there's only a certain defined scope of appeals that actually meet the parameters of 1292A3. It's important to remember that's an exception to the general rule that interlocutory appeals are not able to be appealed unless they, in this instance, have appellate jurisdiction and determine the rights and liabilities of a party. In this case, the bank, after it seized the vessels, filed a motion for summary judgment, and it asked for several things. It asked for its mortgages to be deemed valid. It asked for the mortgages to be deemed superior to the other liens in the case. It asked for judgment in its favor in an amount identified as being secured by its interest in the vessels. It asked for those vessels to be sold to satisfy the judgments. And it also asked for the matters, the other liens to be discharged upon sale. The district court's ruling granted only a sliver of the requested relief and deferred everything else. What the district court did is said, yes, these mortgages are valid under the Ship Mortgage Act, but there are prescription defenses that are raised as it relates to two vessels, so we can't grant summary judgment as it relates to the mortgages on those vessels. It also didn't grant us the right to sell the vessels, didn't enter final judgment, didn't enter an amount that is owed and secured by those vessels. All it did was say that these mortgages are valid. Well, what do you say would be the point in time when an interlocutory appeal in the matters that, as you've discussed, are left, an interlocutory appeal would be appropriate? And that's a fair question, Your Honor. I think the answer is, in the Saramacca case, in that instance, there was a sale. And that effectively terminated the vessel owner's rights in the vessel. We're not there yet. That case actually doesn't stand for what Vessel Owner's Proposal does. It actually shows that we're premature in this instance because we haven't gotten to the sale piece. Additionally, the court has to resolve the prescription issues, because only in that instance is this an enforceable ship mortgage as it relates to the two vessels, Mr. Allen and the L.B. Whitney. Those are two of the other vessels that are part of the case that we have in-room claims against, the bank has in-room claims. Until those prescription issues are resolved, the claims are not fully adjudicated. And that's important to look back at what the scope and purpose is of 1292A3. As you noted, Judge, it's to decide or to have the ability to appeal a liability finding that's full and final as it relates to a particular claim before a protracted damages trial. That's not what we have here. We have in- When could the sale of the vessels be authorized in your understanding of how this works? It could be under one of two ways. One is interlocutory sale under Rule E9, which is a supplemental amnesty rule that allows an interlocutory sale. We've re-urged that after the appeal, which shows that this matter is continuing to be litigated at the district court level. Or as we hope happens, the district court enters summary judgment in full, which has been re-raised by the bank on appeal at the district court level after the appeal. And if there's a final judgment at that point, we'll be entitled to enforce the judgment by selling the vessels. And the reality, Judge, is what's trying to take place here, what the vessels are trying to do is have a shouted appeal without having to file a bond. They've effectively stayed at the district court level, the district court matter, while being able to seek an interlocutory appeal on the guise of 1292.83, when it doesn't fit the parameters. They cite to the Mr. Dean case, but in that case, they actually decided the priority of a mortgage vis-a-vis the other lien holders. We asked for that relief in the district court, and the district court deferred that relief. We had to re-urge it on summary judgment after the appeal was filed. That decision has not been rendered by the district court because it was stayed. One of the other things that was not addressed, I think, in the opening presentation is rightness. And in fact, I think the argument that's been presented today is a little different, in fact a lot different, than what was in the opening brief. In the opening brief by appellants, they raised the single issue of whether, in their terms, whether state law governs the validity of a ship mortgage. And alternatively, they say, if a mortgage is invalid under state law, can it still be enforced under federal law? In the opening presentation, they now change and want to attack the actual substance of the mortgages in this case, but they're not part of the record. There is, the mortgages are simply not part of the appellate record, yet the vessel owners are now trying to cite to them to argue that they are invalid under Louisiana law. The district judge has presented this question of whether there's a real debt here. The debt is uncontested as far as . . . Well, whether the mortgage has an actual amount that it secures. The mortgage actually has a referenced amount of $8,500,000, it's in the district court opinion. But as was explained, I think, in the district court opinion, then in the briefing, it's a collateral mortgage package. So it is definitely a fictitious note that is then pledged in conjunction with the ship mortgage to secure a real debt, which is the hand note, which is the note that came after the actual indebtedness that was extended. And the court found that there's nothing that precludes the use of that under the SMA, the Ship Mortgage Act. But as it relates to ripeness, which is a separate independent reason why this court doesn't have jurisdiction. What . . . the way that this appeal has been presented is that under state law, their argument is that Louisiana law abolished the use and the ability to secure an interest in a vessel by using a collateral mortgage package. They say as a result, state law has been relevant to whether a mortgage is valid under federal law. And they say that the district court erred by rejecting state law. But then in their requested relief, at the end of their original brief, what they ask is for this court to remand the case back to state court . . . all right, to federal court, the district court, and ask the district court to then determine that state law has actually abolished a collateral mortgage package being used to secure a ship mortgage. So it's a complete circle that gets you back to a future contingent event that may never happen, i.e., the district court may ultimately find, and we believe will find if it's ever raised . . . required to do so, that a collateral mortgage package and the use of a collateral mortgage is a proper way to secure an interest in a vessel. That's why the way . . . It is or it isn't. I didn't . . . It is. It is. And that's why the way that it's been presented, it's not right. What they're asking this court to do is issue an academic advisory opinion on what the controlling or governing law is on the ship mortgage, simply because they think that under Louisiana law what we've done is improper. But then they're asking you to send it back down to the district court and have the district court make that actual determination, which has not been made. It's a completely circular presentation of the appeal. Moving on now to the substance of what they actually contend, I think it's important to start with the history and policy of the Ship Mortgage Act, because that's what the district court looked at, and that's what the district court did in the Noonee Gee case. Two district courts now have held that a collateral ship mortgage is a valid . . . or is . . . has rejected the application, excuse me, of state law to a collateral ship mortgage being used to secure a vessel, with the Noonee Gee and then Judge Malazzo, the decision in this case. The Ship Mortgage Act was enacted in 1920. Before then, you could not have a ship mortgage enforced in federal court. It was always subordinate to other maritime means, and so it offered very little, if any, security to lenders. In 1920, Congress decided to enact the Ship Mortgage Act to do several things. One, to promote investment in marine financing, to make it easy, to make it secure for lenders knowing that they have a security interest in vessels, and then also to provide for exclusive federal jurisdiction, because before they didn't come into maritime, into Abentee jurisdiction. We cited extensively the Thomas Barlum case, it's a Supreme Court case from 1934, which is important for several reasons. In that case, the Supreme Court said that the Ship Mortgage Act granted exclusive jurisdiction to federal courts to enforce the lien for mortgage. It cannot be tested by extrinsic criteria. It's intended to encourage investment in the shipping industry by providing greater security, and it's intended to give greater confidence to lenders if a vessel meets the simple conditions of the Ship Mortgage Act. What the vessel owners are trying to do here is add an additional layer onto the requirements for a ship mortgage to be enforceable under the Ship Mortgage Act. As Barlum noted, it says to hold that a mortgage that satisfies the conditions of the Ship Mortgage Act is not within the Ship Mortgage Act is not to construe it, but to amend it. And the Supreme Court made it very clear in that case, they're no more free to amend the The other cases that we cite in our brief is a long line of Fifth Circuit cases that deal with the purpose, history, and intent of the Ship Mortgage Act. We cited the CIT court, which is a Judge Wisdom case from the early 1970s, saying that this Ship Mortgage Act governs the construction and validity of a ship mortgage. Walter Heller, again, another Judge Wisdom case in 1979, state law cannot apply where it would contravene the purpose of the Ship Mortgage Act. The Fouchon case in 1984, the policy of the Ship Mortgage Act requires preemption of Louisiana law. We also cite it to the Seattle First National Bank case. It's a Ninth Circuit case that says the satisfaction of the Ship Mortgage Act's minimum requirements is sufficient. State law cannot be applied. But the principal case that we cited to, and that the lower court relied on in adopting the Noonan G case, is the en banc Fifth Circuit's decision in J. Ray McDermott. In that case, the court looked extensively at the history, purpose of the Ship Mortgage Act to find that state law could not be applied where it would undermine the uniformity of the Ship Mortgage Act. And its purpose of making sure that the act met the settled intentions of the parties. The court said in that case, state law could not. Counsel, excuse me. Does that mean, I mean, one of the things that's not clear from some of this kind of language to me is whether the opposing counsel wants to use the word gaps, I think, maybe I'm being unfair, but I've seen that. Does state law have a role to play to fill gaps, to explain, as one of the things McDermott talks about, explain better what the Mortgage Act may mean? What's the role of state law in your presentation today? It's a very good question, Judge. It does have a role, but the role is limited. You start with the premise that the Ship Mortgage Act was passed to govern exclusively ship mortgages. If there is a gap, then state law, as well as bankruptcy law and federal law, can be looked at as a supplement or as guidance, as long as the law of the state does not undermine the purpose or intent of the Ship Mortgage Act. One of the things that's being discussed here is the Ship Mortgage Act does not, in fact, declare enough to make a fully functioning mortgage, and you need to look at, and you probably correct me, that's not quite what's being argued, but it does seem to me that what is being said today in a briefing is that the Ship Mortgage Act doesn't give us enough detail to know if we have an actual mortgage. Is that a characterization that any case law has adopted? That's a presentation in the position of the vessel owners. We disagree vehemently. If you look at the text of the statute— I'm reading that in terms of gap. I'm not trying to overstate what I'm asking you, but is there a role under that sort of There is, but again, there has to first be an identifiable gap, and then second, state law cannot contravene the purpose or intent of the Ship Mortgage Act. Is that purpose in large part uniformity? Uniformity and rendering security interest in vessels invalid when the settled, stated intention of the parties is to lend money for marine purpose, and in turn, in exchange for security interest in a vessel. It's clearly undisputed in this case, money was lent not only for the vessel to be financed, but the vessel to actually be built. Then it was refinanced with a security interest granted through a collateral mortgage package. Money was then used to put that vessel to work, and it was never, ever in doubt the  There's no allegation of fraud, duress, error, vice, lack of consideration. They don't even dispute the debt or that there's a default. All they're arguing is that the way in which the security interest was papered is not valid under Louisiana law, and I'll get to that in a second as to why that is a flawed premise as well, because there is no case that says that. They don't cite to a single case because there is none. That's why this whole appeal is suspect, the way that it's presented and the law that it's relied on. But back to the statute, Your Honor. The statute clearly defines what a preferred mortgage is, and it lays out the elements that are required, and it states that a preferred mortgage is a mortgage that includes the whole of the vessel as filed in compliance and substantial compliance with 31321, which is 46 U.S.C. 31321. Within the text of 31321, the Ship Mortgage Act actually says the word valid multiple times. It says it has to be filed to be valid. It says that in order to be valid, it has to be filed in substantial compliance with the Ship Mortgage Act. You must identify the vessel, state the name and address of each party of the mortgage, state the amount of direct or contingent obligations, state the interest of the grant or mortgage or state the interest mortgage, and be signed and acknowledged. The whole intent and purpose of the statute is to make it simple, easy for marine financing to encourage investment and to make sure that security interests are recognized in vessels. What they're trying to do is add an additional layer that says at the very beginning of the That's not in the statute. And adding that additional element is tantamount to amending the statute, but also adding an overriding obligation that then requires the mortgagees to comply with the laws of 50 different states. That would completely undermine the uniformity principles of the Ship Mortgage Act. I just want to touch on a couple of things. One, there's been a citation in the reply brief and then in the presentation this morning about cases that have applied state law. I think it's important to look at the actual facts of those cases to show why they don't support the broad sweeping contention that state law somehow determines the validity of Val Non of a ship. The vessel owners rely on custom fuels, which is a Fifth Circuit case also by Judge Wisdom in which Judge Wisdom looked to bankruptcy law to supplement the Ship Mortgage Act. Because in that instance, there was a sham mortgage, and it furthered the purpose of the Ship Mortgage Act to prohibit a sham mortgage from being enforced under the Ship Mortgage Act. So the court adopted and looked at the equitable principles of bankruptcy to determine the priority of a mortgage. It's important to note that in the custom fuels case, they didn't actually look at validity or invalidity of a mortgage. All they looked at was priority as it relates to other liens, and they said, look, this is a sham setup, and as a result, it needs to be equitably subordinated to other lien holders because of the way that the mortgage was set up. That's not what we have here. We have clear intent of the parties to have a marine transaction where money was lent, security interest was granted, mortgages were courted in compliance with the Ship Mortgage Act. There was no dispute at the district court level—excuse me, there was no dispute in the appellate briefing as to whether the bank complied with the Ship Mortgage Act and its requirements. There has been argument now, an oral argument, that we didn't somehow comply with certain requirements, but that's simply either been waived or not the case. The other cases that have been cited, too, are generally district court cases from other jurisdictions. One case, I think, that has been relied on extensively is the Bergman case, which is a district court case from Connecticut in 1968. In that case, the court looked to state law for—to supplement the Ship Mortgage Act with respect to the issue of consideration. In that case, it was a sham mortgage. A vessel owner granted a mortgage to his mother, and there was testimony in the record that he did it to protect himself, so that that would then have priority over other liens. The court wouldn't allow that. They looked to state law as guidance to further the purposes of the Ship Mortgage Act. If the vessel owners are right that somehow state law can be looked to here, their argument, if they're right, invalidates the ship mortgages in this case, which cannot further the purpose of the Ship Mortgage Act. But also, the Bergman case was relied on by the McDermott panel, the original panel on appeal, and then en banc, the en banc court said, that's clear legal error. Bergman was not the right source or principle of law to be relied on, and federal law should promote the purpose of the Ship Mortgage Act. Finally, just a couple quick points on the validity of a collateral mortgage. The UCC absolutely did not abolish the use of a collateral mortgage. There is no case that says that. They don't cite to a case that says that. We cited in our brief to the Articles 3143 of the Louisiana Civil Code, which says that you can still pledge—even though you refer to something as a pledge, it still can be used as a grant of security interest, and they actually reference in the, uh, the notes, the annotated notes, that a collateral mortgage is one example. So Louisiana law clearly allows this package to be used to secure an interest in the vessel. All right, Counsel. Allow me to brief for the rest of it. I always like it when someone—your opponent—starts telling, describing what's in your briefs. My briefs are pretty clear of the issues presented, and we raise the fictitious note and the whole issue about there not being a real obligation there. So to say that we didn't raise that and we waived it is not true. It's in the original brief where we cite the Diamond Services case in our reply brief that this is a made-up, not a real note. And that's the contradiction. Do you hear the contradiction? Oh, ship mortgage act, only look at the ship mortgage, don't look at state law. Well, this is a good collateral mortgage. You know, this note we have over here is really a collateral mortgage note, and you look at state law and it's really effective. That's their problem. They have a real problem here, that that's not a real note. It does not state the amount of the obligation. There is no obligation. That's why—that's their problem right there. So they have to reach back to state law. They said state law should not apply. They have to have state law here. They have to have state law to turn this fictitious, no obligation, Diamond Services says there's no obligation, it's just made up, into an obligation here. So they have a real contradiction there. Now looking at 1292, they talked about the prescription issues, the other vessels. We haven't appealed the issue on the other vessels, the mortgages on the vessels. We're only appealing the one on the little owl where there's a final determination, there's a valid mortgage. And you know what's next? They have a motion for interlocutory sale pending, and they're immediately going to go for their interlocutory sale, and they're going to bid in the amount of their mortgage. They want to credit bid that mortgage. Yes, the court did not order the sale in their initial ruling. That's a remedy. But there was a determination of the merits of our defense, and that there wasn't a valid mortgage under the SHIP Mortgage Act, it wasn't valid using state law to fill in the gaps. And that is not a theoretical issue. I mean, the rightness thing, these are issues of law. Rightness goes that if you need further factual development, okay, but you don't need factual development here. These are issues of law. And second of all, the other part of rightness is that we will suffer hardship. The district court's already found that if this goes forward with an interlocutory sale, that we will suffer irreparable harm based on the useless judgment rule. So on rightness, this is very right. Now, we also ask in our papers about, you can remand it, or you can take a next step in this court. In our reply brief, we said, in this court, can decide and rule that it's not a valid mortgage. We don't have to go back to district court. In our papers, we ask for this court to make that ruling. So there's nothing circular here. Again, they characterize our papers. Our papers say what they say. And when it comes to uniformity, the UCC is a uniform commercial code. And that's, in case law, the Ninth Circuit Interpol says that's what Gilmore Black says that's what we draw upon to fill in these gaps. And confidence in vessel financing, we do vessel financing, I do, and they look to the UCC. And if we, this court would say that you can't look at the UCC, which is state law, to fill in the gaps, that could wreak havoc in the national marine finance arena. Because we constantly have to look to the UCC to fill in these gaps. We have to look to law to have a granting clause. There's no granting clause. Again, the uniform commercial code has a UCC one, which is just like the ship mortgage, where it just notices. But in order to have a valid security interest on the UCC, you have to have a granting clause. There's no granting clause in the Ship Mortgage Act. It just says tick off these recording requirements, and the Coast Guard will accept it. There's a real need to fill the gaps, as Customs Fuels said, and Gilmore and Black have commented, the leading commentator, that the Ship Mortgage Act has tremendous gaps in it. It's far from perfect. So we practitioners in the national vessel financing field have to look to other areas of law, such as the UCC, to fill in the gaps. So confidence would be harmed if you adopted the NUNIG decision and the decision of this bank. But again, this bank contradicts itself, saying, oh, just look at the Ship Mortgage Act. That's all you need. Oh, by the way, it's a collateral mortgage, and this is valid, and we use this collateral mortgage note, because this note really is a fictitious note, and it really was part of the whole collateral package, collateral mortgage package. That just doesn't ring true. It's an extreme contradiction. The Court, they mentioned the Morningstar decision, and that had an en banc decision and it had broad language in it, and it dealt with whether or not you use the Louisiana Deficiency Judgment Act, where in terms of deficiency judgment, the Ship Mortgage Act is directly on point. Thank you. All right, counsel. Thank you both. We will.